**Martin, Gunn & Martin, P.S.**
Sentry Office Plaza, Suite 420
216 Haddon Avenue
P.O. Box 358
Westmont, NJ 08108
Telephone: 856-858-0900
Facsimile: 856-858-1278

*Attorneys for Plaintiff David V. Ames*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID V. AMES,<br><br>               Plaintiff,<br><br>v.<br><br>CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF THE LATTER-DAY SAINTS, a Utah corporation sole, a/k/a the "MORMON CHURCH," and WILLIAM SCOTT HANSON, individually,<br><br>               Defendants. | Civil Action No 06-CV-3441 (WJM) (MF) |

**PLAINTIFF'S RESPONSE TO DEFENDANT CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS' RULE 56 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I. PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

Plaintiff provides this response to Defendant's Statement of Undisputed Fact with specific explanations of disputed facts in addition to its response included within its Memorandum of Law in support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment:

1. Admitted.
2. Admitted.
3. Admitted.
4. Admitted.
5. Admitted.
6. Admitted.
7. Admitted.
8. Admitted.
9. Admitted.
10. Admitted.
11. Admitted.
12. Denied. Plaintiff denies that such facts are undisputed. Although Scott Hanson has denied in his deposition testimony in this case that he ever abused anyone in 1986, in 1986 he admitted to then Stake president Leland Howell that with the three or four boys involved in the criminal investigation he had wrestled under covers with the boys, gotten carried away, inadvertently touched private areas of the boys and that he go caught. *Howell*, 106, 110-11.
13. Denied. Plaintiff denies that such facts are undisputed. Ryan Boley's testimony establishes during overnight camping trips Scott Hanson gave Boley massages while Boley was

1

only wearing underwear on two separate occasions, that during one of the massages Hanson touched Boley's genitals, that Boley believed then and now that Scott's conduct was inappropriate and that Boley provided the police with the same information in 1986. *R. Boley*, 32-35, 44-47, 49-51, 70, 72. Martin Davis' testimony establishes that Scott Hanson gave him massages on five different occasions when Davis was wearing only underwear, that he truthfully provided answers to the police's questions in 1986 and that he believed Hanson accidentally touched him inappropriately during the massages. *M. Davis*, 32, 34, 38-40, 66

  14. Denied. Plaintiff denies that such facts are undisputed. Defendant COP's asserts that Bishop Hansen did not "pre-judge Scott Hanson's guilt or innocence; rather he decided to conduct his own investigation of the allegations without interfering with the criminal process." Plaintiff disputes that Hansen had no ideas about Scott Hanson's guilt or innocence during his so-called investigation. See Plaintiff's Opposition. Further, Plaintiff contends that Bishop Hansen did in fact interfere with the criminal process when Bishop Hansen spoke at Scott Hanson's sentencing in a clear effort to help Scott with the sentencing Judge. *Id*.

  15. Admitted.

  16. Admitted.

  17. Admitted.

  18. Denied. Plaintiff denies that such facts are undisputed. Bishop Hansen's deposition testimony establishes that he is unable to remember if he ever spoke with or contacted the Schill's then bishop. *Hansen*, 29-30.

  19. Admitted.

  20. Admitted.

21. Denied. Plaintiff denies that such facts are undisputed. Throughout this litigation Plaintiff and some of Defendant's own publications and some witnesses have defined sexual abuse as including "any sexually stimulating activity, between a child and an adult or another child who is in a position of power, trust or control," and Defendant's own publications further indicate that an adult exposing themselves is considered sexual abuse. *R. Hansen*, 253, 263. Thus, while the language of the statute indicates that Scott Hanson was not convicted of Utah's then technical definition of sexual abuse of a child, Plaintiff vehemently disputes that the conduct for which Hanson was convicted did not constitute sexual abuse. Furthermore, because of his conviction, Hanson was considered a "sex offender" pursuant to Utah Stat. Ann. § 77-27-22.5.

22. Denied. Plaintiff denies that such facts are undisputed. Scott Hanson was sentenced to one year of incarceration that was suspended pending probation. Hanson was considered a "sex offender" pursuant to Utah Stat. Ann. § 77-27-22.5 and subject to the registration requirements of that sex offender registration statute.

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. Denied. Plaintiff denies that such facts are undisputed. Plaintiff disputes that Scott Hanson had no church callings that involved him in Youth activities in Wisconsin. The police report, sentencing transcript and other Wisconsin court documents indicates that Scott's

3

involvement with his victims arose directly from his interaction with his victims through some calling related to the Scouting program and other church callings.

29.  Admitted.

30.  Admitted.

31.  Admitted.

32.  Admitted.

33.  Denied.  Plaintiff denies that such facts are undisputed.  Scott Hanson informed Kathy Ames that Scott, his wife and son were going camping and he invited along any member of the Ames family who wanted to go. *K. Ames*. 54. Plaintiff disputes that Scott invited David only to go camping with him as implied by the Defendant's recitation of facts.

34.  Denied.  Plaintiff denies that such facts are undisputed.  Kathy Ames testimony clearly establishes that when Scott Hanson was called as the Ames' home teacher the families were acquainted but the friendship between the families developed over time after Scott Hanson had been called as the Ames' home teacher. *K. Ames*, 51.

35.  Admitted.

36.  Denied.  Plaintiff denies that such facts are undisputed.  The timing of when Scott Hanson began to sleep over at the Ames' home is disputed by the Plaintiffs. While there is some evidence to suggest it could have been as early as September 1998, Kathy's deposition testimony, the onset of Chris Ames mental breakdown and David's statement to police all suggest that Scott likely did not begin sleeping at the Ames home until after Chris had a breakdown in November 1998. *David Ames Statement to Police*, 21-22, *K. Ames*, 67, 70-77, *C. Ames*, 52-53.

4

37. Denied. Plaintiff denies that such facts are undisputed. The timing of when Scott Hanson began to sleep over at the Ames' home is disputed by the Plaintiffs. While there is some evidence to suggest it could have been as early as September 1998, Kathy's deposition testimony, the onset of Chris Ames mental breakdown and David's statement to police all suggest that Scott likely did not begin sleeping at the Ames home until after Chris had a breakdown in November 1998. *David Ames Statement to Police*, 21-22, *K. Ames*, 67, 70-77, *C. Ames*, 52-53.

38. Admitted.

39. Admitted.

40. Admitted.

41. Admitted.

42. Admitted.

43. Admitted.

44. Denied. Plaintiff denies that such facts are undisputed. As detailed in Plaintiff's Opposition, Plaintiff believes it is significant that Bishop Braby was explicitly instructed by legal representative of the church not to report the then suspected abuse directly.

45. Admitted.

46. Admitted.

47. Admitted.

48. Admitted.

49. Admitted.

50. Admitted.

5

51. Denied. Plaintiff denies that such facts are undisputed. Plaintiff disputes that Kami Hanson had to convince Chris Ames to confront David. During a telephone conversation with Kami Hanson, Chris Ames was finally given the same information Bishop Braby had since June regarding Scott Hanson's prior criminal conviction and within 48 hours David admitted the abuse, the police conducted interviews and Scott was arrested.

52. Admitted.

53. Admitted.

        MARTIN, GUNN & MARTIN, P.A.
        Attorneys for Plaintiff David Ames

        BY:  /s/ William J. Martin
              WILLIAM J. MARTIN